Case number 18-312 United States of America v. Daraya Marshall, also known as the appellant. Ms. Davis, for the appellant. Mr. Honnold, for the appeal. Good morning, May Police Court. I'm Mary Davis, and I represent the appellant in this case, Mr. Daraya Marshall. The single issue in this case is the appellant's claim that his counsel in district court was ineffective for not objecting to the proposed witness disqualification. In this case, the government sought to, should the case include a trial, the government was going to put Dr. Cooper on the stand to testify regarding the dynamics of sex trafficking. Now, the government argues that she was not offered as a forensic pediatric expert, but she was rather going to help the jury understand the dynamics of child sex trafficking and the effects on the minor victims. As the joint appendix shows on page 171, Dr. Cooper's experience involved mostly pediatric work and then working with children who were victims of child sex trafficking. But at the same time, the government was going to offer her to testify about the behavior of the traffickers. As noted on page 172 of the joint appendix, she was going to testify regarding the recruitment of children, regarding the grooming of the victim, regarding the exploiting the mental vulnerabilities of the victim. Your argument in your brief, as I understood it, was that she was not qualified because she was trained in general pediatrics and not in sex trafficking. It wasn't this distinction between the trafficker and the victim. Which is your argument? The argument is that she did not have any training or expertise in working with the sex trafficking dynamics. No, victims is what your brief said. Right. She had experience, of course, working with child victims and sex trafficking. But for her to go on and testify further, she did not have the qualifications to talk specifically about what the government was offering her for. And that was how the dynamics between the trafficker and the child victim. She had no experience at all working in the field of working. She did not have any training, I should say, and she did not work with actual sex traffickers. So she did not have the qualifications to testify about what she was being offered to testify about. Does that answer the question? No, I'm just trying to go, because as I read your brief, and it's very short, she took no additional courses related, I'm on page eight, she took no additional courses related to sex trafficking and had no certification or training in that area. Exactly. Okay, she has tons of experience. You were talking about taking no courses, but she has tons of experience dealing with sex trafficking and sex trafficking victims. Do you dispute that part of her resume? No, she has experience working with victims of sex trafficking. She does not have any training on the dynamics between the trafficker and the victim. Where is that argument in your brief? It's on page eight. Okay, on page six, I discuss that Dr. Cooper was employed as a staff forensic pediatrician, that she worked as a medical staff at the Cape Fear Valley Health System, and that she was staff developmental forensic pediatrician. Right, that's your argument that she didn't have sex traffic training, that she was just a general pediatrician, which is the argument you make on page eight. That's not the argument I hear you making right now. Well, I think it is the same argument, Your Honor, because her experience was solely dealing with the victims of sex traffickers, and it did not deal with... When you deal with the victims of sex trafficking, would you learn about the tools that were used to get them into sex trafficking? I really, I can't say that that is true. I mean, I think the victim can talk about, okay, I was picked up, and I had to do this, that, and the other thing, but that does not show that she has the actual expertise in the dynamics of sex trafficking. She can talk about, in fact, the government says that the... Do you dispute that she's been qualified to testify in this area by many other courts? She has been, yeah, she has been qualified, I think, mostly in district courts in Illinois, I believe. I believe that there are very few, I didn't see any instances where someone actually questioned her expertise, and I... Maybe that's because the qualification seems so apparent from her CV. Well, I, I mean, my experience, not in this case, but, I mean, experience has shown that when a defense attorney says that this expert is not qualified, well, then the government has to approve the qualifications. The defendant would be entitled to a Daubert hearing, and, you know, bring the... This isn't a Daubert issue. This is a resume issue and an experience issue. This isn't some novel form of science, and she has a 90-page resume with extensive experience dealing with sex trafficking of children, and articles, and a book, or at least a portion of a book that she's written. So I don't understand how your theory, which I did not see advanced in your brief at all, and you didn't do a reply brief to clarify anything, so I don't see the argument that you're making now, even in your brief, but assuming it were, I don't understand how someone could understand the children and treat the children and understand what brings them into and keeps them trapped in these situations without understanding dynamics of sex trafficking. I guess I just don't understand your argument. Because I think the argument is that she has only dealt with the children. She has no training. What were they offering her testimony for? They were offering her testimony, if I could grab the joint appendix, on page 172. Dr. Cooper will opine that traffickers target certain victims based on one or more common characteristics, which make them vulnerable to recruitment. Now, I don't know how a child victim could talk about the recruitment and how the trafficker makes decisions on who to recruit and who not to recruit. Because the only way that she's... But she would not be able to testify on what the grooming was. I mean, because she... I mean, the objection that was raised by counsel to her testimony was that she was going to be able to explain why weaknesses in their testimony or why they might have not come forward when they did, why they might have sort of gaps in their recollection or their ability to testify. And that was the objection that was raised. And the concern was that she would be, as was argued at least by defense counsel, sort of taking over the jury's role of assessing credibility on those things. You don't dispute that all that was well within her expertise? I don't. I do dispute that it was within her expertise. That's all about how the victims would be able to testify, how they would recall their story, how they would have reacted to the trafficking process. Right, but they offered her far more than that. They offered her to give testimony as regarding trafficking. And the victims are only one part of that. They are only one part of the trafficking issue. Then there's the trafficker and how he and how that person grooms the victim, how that person picks the victim. The victims can't answer those questions. No matter how many victims she sees, the victims cannot say that I was picked, I was recruited because of this characteristic. I mean, they cannot do that. She could only testify on the effects of the trafficking on the victims. That was what her expertise was. That is what she knew. And what they offered her for went far beyond that. Went far beyond what she learned from dealing with the victims of these cases. In fact, the government points out in its brief that... What did the district court say her testimony would be allowed for? Actually, the district court did not specifically say what it would be allowed for. She said it was very limited and careful questioning at the end of all the testimony. Excuse me. I thought it was limited and careful questioning at the end of the testimony. Right, but she didn't say what it was restricted to. The district court said that the expert would testify after the victims. And the district court said, I don't want her getting up here and testifying about everything else that she said in other cases. But the district court didn't limit what her testimony would have been. And that's where we think the problem is. Is that there was no proof of what her qualifications were. In fact, the government states in the brief that one of the things that she did is she attended trainings and has taught thousands of undercover law enforcement agents about the mental and physical health issues of victims. But that doesn't... But that goes... What she was being offered for went beyond what happens to the victims. And that's what her expertise was. The effect on the victims, not the whole dynamics of the trafficking issue. All right, thank you. We'll hear from the government now. I'm sorry. Good morning, and may it please the court. Daniel Honnold for the United States. This court should not remand this case because the record clearly refutes appellant's claim that appellant was... due to any ineffective assistance of counsel in this case. Starting with the qualifications of Dr. Cooper, as this panel was discussing earlier with counsel for the appellant, the main reason why the ineffective assistance of counsel claim fails here is because Dr. Cooper was eminently qualified to testify on the subjects that were proffered by the government. As the court noted in her extensive CV, she has multiple contacts both with victims and law enforcement officers that would have qualified her through experience to testify as to the general dynamics of sex trafficking. As a result, any argument to the contrary before the district court would have plainly failed there and would not have carried the day and would not have changed the district court in some limited form the testimony of Dr. Cooper. And I think in some limited form is also an important aspect to consider here in determining whether or not there's any colorable claim that there was ineffective assistance of counsel. To the contrary, trial counsel for the defense made the only claim that has ever swayed any court to do anything to limit the testimony of Dr. Cooper in a district court case. There have been many cases that both parties have brought before the court that explain the extensive qualifications of Dr. Cooper to testify. The only case that goes the opposite way is Delgado from the Third Circuit in 2017, a case actually cited by the government in its opposition to defense counsel's motion to exclude Dr. Cooper. And the rationale for limiting or excluding her testimony in that case is that it wouldn't have been helpful to the finder of fact. Every case to consider the question of whether or not she's qualified to testify as an expert has clearly held that she is so qualified. And that was apparent to the district court. The court had plenty of information for it to make that determination. Contrary to Appellant's argument, the district court has an independent gatekeeping function under Rule 702 and Daubert to assess the qualifications before ruling on whether or not an expert witness is going to be allowed to testify. When she did, when the district court did affirmatively allow Dr. Cooper to testify, it should be the case that such a finding of qualification was already incorporated into that finding. Otherwise, she wouldn't have allowed that testimony to go through. Can you address the argument made here about her expertise being you have to be strictly limited to the victims rather than the traffickers? Yes, Your Honor. Well, I think the first thing to say here is that it's also the government's position that that claim is a different one than the one that was raised in the briefs here on appeal. Because it's raised for the first time in oral argument, the court would be within its rights to simply disregard it as waived. However, just tackling it head on, it seems to be the case that due to Dr. Cooper's extensive experience working both with law enforcement officers and the victims themselves, that she would, through experience as contemplated by Rule 702, be eminently qualified to testify on the general dynamics of sex trafficking for essentially all of the topics that the government has proposed to allow her testimony to be for, and especially as narrowed and tailored by the district court in this case specifically. As Your Honor alluded to earlier, the district court said that Dr. Cooper's testimony would only be permitted at the end of the complaining witness's testimony in this case, presumably designed to educate the jury as to potential credibility issues arising from the trauma of being a victim of child sex trafficking. That was the main thrust of the purpose of Dr. Cooper's testimony. We actually had another expert witness, Agent Hardy, who was going to testify more fulsomely about the dynamics of sex trafficking in general, potentially more from the trafficker's perspective. Dr. Cooper's testimony was more focused on why the complaining witnesses would have been acting or testifying the way that they were acting or testifying, and any potential delays or any potential inconsistencies that would have resulted from their initial reporting of the trauma that they suffered. Well, it wasn't crystal clear you were going to be able to get the FBI agent's testimony in, so was she going to talk about what she talked about in previous cases about whom traffickers target, how they target them, as part of her testimony? Is that part of her expertise? It is part of her expertise. It's not clear if the district court would have allowed that particular line of questioning to go forward. The district court specifically said that Dr. Cooper would not be allowed to simply regurgitate the normal testimony that she often gives when she's been qualified at this point hundreds of times as an expert witness, but rather that the testimony would have to be very controlled by the government attorney in the streamline to address the issues in the case. And so I think there is good reason to believe that not all of the purported grounds would necessarily have been gotten into as part of her direct examination as an expert witness. And so, Your Honor, the government submits that this main argument being put forward here would have failed in the district court, and for that reason, the appellant can show neither deficiency nor prejudice from that aspect of it. Even if, for some reason, the district court were to have accepted that argument and rejected the government's proposed expert witness, the appellant still can't show any prejudice in this case. And the reason for that is he cannot show that any purported deficiency actually would have had an impact on the calculus that he had to take a day of trial plea in this case. Rather, the evidence in the record shows that what affected his calculus to take that day of trial plea was the fact that he was facing down the prospect of being convicted on 15 serious felony counts related to child sex trafficking and child pornography. He was going to be confronted by four people that he victimized. He was going to be confronted with numerous forensic and electronic documents that corroborated their accounts of the story. And so even if Dr. Cooper had been excluded, which the government does not concede that she could or should or would have been, but even if it had been the case, the government would have been prepared to proceed to trial and likely to a conviction on all of these counts. And so it's clear from that and from the record and from what we know of the defendant's own mental impressions of the case and lengthy ex parte colloquies with the court that the presence or absence of Dr. Cooper from this case simply did not have a bearing on the defendant's decision to plead guilty in this case. And so if the court has no further questions, the government would submit the briefs and would ask that this court adjourn. Thank you. We'll give you one minute. Just in sum, I would point out that in the brief it was phrased that the requirements of Dahlberg. And it was claimed in the brief that Dr. Cooper's education and training never went beyond general pediatrics. That's a very different argument, right? I don't believe in this. Education training didn't go beyond general pediatrics. It doesn't even get you the victim expertise. But your argument here was acknowledging her 90-page resume of experience in sexual exploitation of children. It was making a much narrower argument, as I understood it, about expertise on the traffickers. Are you now going back to your first argument?  I think they're the same argument, Your Honor. Her CV on page 117 talks about child sexual exploitation abusers and victims. 113, who's being groomed. 113, dynamics of the child victim and offender. It's on there twice. Your Honor, I believe, given my experience of seeing that given the number of new cases, prosecutions for sex trafficking, many doctors and psychologists are now billing themselves as experts in sex trafficking. Where in reality, their expertise is with working with the children. In this case, her expertise was she was a pediatrician who worked with child victims. But that did not give her the expertise to testify about the whole dynamics of sex trafficking. And finally, I would point out that there are many, many colleges out there, universities, online training, that give certifications, that give someone the training for the whole aspect of the sex trafficking. There's nothing here to indicate that Dr. Cooper did any of this. She billed herself as an expert. I think we've got your argument, Your Honor. Ms. Davis, you're appointed by the court to represent the appellant in this case. And we thank you for your assistance.
judges: Millett, Rao, Edwards